Fred WEISZMANN,
Plaintiff-Appellant,

v.

DISTRICT ENGINEER, U. S. ARMY
CORPS OF ENGINEERS, et al.,
Defendants-Appellees.

No. 75–1710.

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1976.

Rehearing Denied March 24, 1976.

David Paul Horan, Key West, Fla., Fred Weiszmann, Northbrook, Ill., for plaintiff-appellant.

Robert W. Rust, U. S. Atty., David F. McIntosh, Asst. U. S. Atty., Miami, Fla., Wallace H. Johnson, Carl Strass, Charles E. Biblowit, Asst. Attys. Gen., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before BELL, AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

The principal issue in this appeal, the jurisdiction of the United States Army Corps of Engineers under Section 10 of the Rivers and Harbors Act, 33 U.S.C.A. § 403, to require permits for the excavation of canals above mean high tide line (MHTL) is essentially the same as in the other dredging and filling cases decided today, *United States v. Sexton Cove Estates*, 526 F.2d 1293, and *United States v. Joseph G. Moretti, Inc.*, 526 F.2d 1306.

Weiszmann is the owner of Orchid Park Estates, a 22 acre tract of land on Sugarloaf Key in Florida. The area is bounded on the west by a state road, on the north by Sugarloaf Sound, on the south by Hawk Channel (both stipulated to be navigable waters), and on the east by a pre-existing canal running north-south from the Sound to the Channel. Weiszmann subdivided the area for residential units, and in 1970 recorded a plat which showed planned excavation of two drainage canals running the length of the subdivision, connecting at the easterly end to the pre-existing canal. In 1973, Weiszmann excavated the two east-west canals by blasting and dredging operations, without applying for or obtaining a Corps permit for these operations. All of the dredging took place on solid upland, above MHTL. The pre-existing canal runs north-south, is 30 feet wide and 20 feet deep and is navigable-in-fact. The two canals excavated by Weiszmann are about 1,300 feet long, 50 feet wide and about 14 feet deep. Both canals are subject to tidal fluctuation.

In the course of the dredging operations Weiszmann was cautioned by the Corps in July of 1973, that the connection of these new canals to the pre-existing canal would require a permit. Weiszmann disputed this, claiming the canals were not within the Corps' jurisdiction, and after several months of communication and lack of communication, in October of 1973, Weiszmann simply proceeded to connect the southernmost

canal (Canal # 1) to the pre-existing canal. Canal # 2 was not connected with the pre-existing canal. He interpreted the Corps' silence to his letters as their concession of no jurisdiction. In December 1973, the Corps demanded that Weiszmann plug the connection in Canal # 1, apply for a permit for the connection, and not excavate any further connection in Canal # 2 without Corps' authorization.

Weiszmann filed suit seeking a declaratory judgment and injunctive relief restraining the Corps from exercising jurisdiction over these canals. The government counterclaimed for injunctive relief prohibiting Weiszmann from any further permitless dredging activities, and compelling restoration of the area to undo the effect of the dredging activities. Jurisdiction was asserted under the Rivers and Harbors Act, and under the Federal Water Pollution Control Act Amendments of 1972, "FWPCA", 33 U.S.C.A. §§ 1251–1376, for imposition of civil penalties. The district court dismissed Weiszmann's complaint, granted the restoration relief prayed for by the government under the Rivers and Harbors Act, and imposed a fine of $5,000 under FWPCA.

Weiszmann raises a number of arguments. He claims that the Corps has no jurisdiction to regulate the canals he excavated because (1) they are situated on private upland, above MHTL; (2) the limited private noncommercial status of the pre-existing canal, as well as of the two additional canals make them not "navigable waters" because they do not in fact support commerce or public traffic. His third argument is that even if the excavated canals connect to navigable waters, nevertheless the government offered no evidence to show any effect on the course, condition or capacity of navigable waters which would support the exercise of Corps jurisdiction. And in addition, he contends that the Corps affirmatively misled him to his detriment in relying on their regulations, and in their conduct in appearing to acquiesce in his understanding that his project was outside their jurisdiction, and alternatively a general equitable estoppel of laches.

Weiszmann's final major challenge is to the validity of the trial court's restoration order that the canals be totally filled. He argues that the injunctive provisions of Section 406 of the Act, 33 U.S.C.A. § 406, do not warrant such relief here, even if jurisdictionally possible, because the requisite factual finding of an obstruction which interferes with or diminishes the capacity of navigable waters has not been either alleged or shown.

With respect to his violation of the FWPCA, Weiszmann argues that there was insufficient evidence to prove his dredging discharged "pollutants" into waters of the United States.

■ We have in *Sexton, supra,* decided today, already considered the arguments which form the basis of Weiszmann's challenge to the Corps' authority over his canals, namely the objections to jurisdiction above MHTL and the validity of the restoration order. There is no merit to Weiszmann's objection to the Corps' jurisdiction over Canal # 1 which connects to the pre-existing canal. However, with respect to Canal # 2 which does not connect to any body of water, Weiszmann's jurisdictional objection is well taken. The Corps has no jurisdiction over the dredging of landlocked canals above MHTL. *Sexton, supra.* Accordingly we reverse that part of the judgment ordering restoration of Canal # 2. As to the district court's injunction ordering restoration of the connecting canal, we vacate and remand for an evidentiary hearing to afford Weiszmann an opportunity to present his objections to the manner of restoration ordered. The district court remedial injunction that was entered, like that in *Sexton, supra,* lacks a factual record establishing that the court's choice of the specific restoration ordered was based upon a comprehensive evaluation of the environmental factors involved and the practicalities of the situation.

■ We reject the other arguments made by Weiszmann. He contends that private artificially created canals cannot be within the Corps' jurisdiction as "navigable waters" because they do not actually carry commerce nor are open to public traffic. There is no requirement that a body of water sustain actual commerce in order to meet the test of navigability. *United States v. Diamond,* 5 Cir. 1975, 512 F.2d 157, 160, cert. den. 1975, 423 U.S. 928, 96 S.Ct. 275, 46 L.Ed.2d 255. Rather, the mere capability of commercial use of a body of water suffices, even if such commerce could be made possible with "artificial aids". *U. S. v. Appalachian Power Co.,* 1940, 311 U.S. 377, 407, 61 S.Ct. 291, 85 L.Ed. 243; *United States v. Underwood,* M.D.Fla. 1972, 344 F.Supp. 486, 492; *United States v. Holland,* M.D.Fla.1974, 373 F.Supp. 665, 670. Moreover, the pre-existing canal connecting into two stipulated "navigable waters", and Canal # 1 dredged by Weiszmann and connecting into the pre-existing canal, are both navigable in fact. "Nor is lack of commercial traffic a bar to a conclusion of navigability where personal or private use by boats demonstrates the availability of the stream for the simpler types of commercial navigation." *Appalachian Power, supra,* 311 U.S. at 416, 61 S.Ct. at 303.

■ Weiszmann next contends that the government has failed to show any evidence that the dredging of the canals in fact affected any navigable capacity or altered or modified the course or condition of navigable waters. We agree that Canal # 2 is beyond the jurisdiction of the Corps because there was no evidence of causal impact of that landlocked canal upon navigable waters. The connection of Canal # 1 directly to a navigable water, however, necessarily modified the course of that pre-existing canal, as well as the connecting waters of Hawk Channel and Sugarloaf Sound. And it was clearly shown that it would be impossible to dredge the canal through without causing sediment to enter the pre-existing canal. The impact upon navigable waters through the fact of this connection is sufficient to establish a violation of § 403. *United States v. Joseph G. Moretti, Inc.,* 5 Cir. 1973, 478 F.2d 418, 429 ("*Moretti I*"); *United States v. Whicard,* E.D.N.C.1974 (unreported). Cf. *Booker v. Rochelle,* 5 Cir. 1928, 23 F.2d 492.

■ We find no merit to Weiszmann's notion of equitable estoppel against the Corps' exercise of jurisdiction over Canal # 1. He argues that he rightfully acted in reliance upon the Corps' regulations, the Corps knew of his actions, and thus by "standing by and watching him complete the [canal] cannot now be heard to complain." *United States v. Lewis,* S.D. Ga.1973, 355 F.Supp. 1132, 1141. Weiszmann did not wait for a final determination of navigability from the Corps before proceeding with the dredging operations. When he was advised by the Corps by letter in July 1973 that a permit was necessary for the connection of the canal to navigable waters, he in turn asserted his belief that a permit was not necessary.

Weiszmann's indulgence in such "Self Help for the Impatient", *Moretti I, supra,* 478 F.2d at 427, is unavailing. When a developer proceeds with dredging operations without permission, the courts have repeatedly "found no basis for estoppel. [The developer] was acting at its peril when, without permission it undertook to make improvements which effected permanent changes in the river channel and in its course." *United States v. Sunset Cove, Inc.,* 9 Cir. 1975, 514 F.2d 1089, 1090; *United States v. Lewis, supra,* 355 F.Supp. at 1141.

■ Alternatively Weiszmann suggests laches as another basis of estoppel, but this argument fails for a number of reasons. First of all, the government is not subject to the defense of laches in enforcing its rights. *United States v. Summerlin,* 1940, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283; *Costello v. United States,* 1961, 365 U.S. 265, 281, 81 S.Ct. 534, 5 L.Ed.2d 551. And, "[n]ot only can laches not be applied as a defense against the United States, but,

even if it could, this is not the case for laches." *United States v. State of Florida,* 5 Cir. 1973, 482 F.2d 205, 210. The defense of laches can be asserted only if, in light of all the factual circumstances of a case, unreasonable delay is found, and such delay causes prejudice. The delay here was not unreasonable. The Corps is not required, nor can it be expected, to act hastily upon permit applications; proper investigation and evaluation of the facts involved in each dredge-and-fill operation obviously requires substantial time. "The mere lapse of time is not sufficient to constitute laches." *Pennsylvania Environmental Council, Inc. v. Bartlett,* M.D.Pa.1970, 315 F.Supp. 238, 246, aff'd 3 Cir. 1971, 454 F.2d 613. Weiszmann's prejudice or harm, if any, is attributable to his action not the Corps inaction.

We turn now to Weiszmann's final argument that there was inadequate evidentiary support to sustain a finding of a violation of FWPCA 33 U.S.C.A. § 1311(a). The short answer is that the district court correctly found that discharge of "sediment" from the dredging amounted to a violation of the statutory prohibition against the discharge of a "pollutant". Section 502 of the Act defines "pollutant" to include "dredged spoil". 33 U.S.C.A. § 1362. Nor can we find merit to Weiszmann's semantical assertion that the evidence fails to show a statutory violation because it established merely a "spill" into waters, rather than a "discharge". Weiszmann finally argues that even if there was a "technical violation" of the statute, it is so insignificant that the district court's imposition of a civil penalty of $5,000 is excessive. We disagree. The FWPCA provides for penalties of up to $10,000 per day of each violation of Section 1311.[1] We cannot be called upon to second guess the question of the amount of the civil penalty imposed within the limitations of the Act.

The judgment requiring restoration of Canal # 2 is reversed. The judgment requiring restoration of Canal # 1 is vacated and this cause is remanded for further proceedings not inconsistent with this opinion. The judgment imposing a civil penalty of $5,000 under the FWPCA is affirmed.

---

1. Section 309(d) of the FWPCA, 33 U.S.C.A. § 1319(d) states:

    Any person who violates section 1311, 1312, 1316, 1317 or 1318 of this title [section 301, 302, 306, 307 or 308 of the Act], or any permit condition or limitation implementing any of such sections in a permit issued under sec-

tion 1342 of this title [section 402 of this Act] by the Administrator, or by a State, and any person who violates any order issued by the Administrator under subsection (a) of this section, shall be subject to a civil penalty not to exceed $10,000 per day of such violation.