**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**JOSEPH G. MORETTI, INC., and**
**Joseph G. Moretti, Jr.,**
**Defendants-Appellants.**

**No. 75–1175.**

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1976.
Rehearing Denied March 24, 1976.

---

Kenneth L. Ryskamp, Duane Anderson, Robyn Greene, Miami, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., David F. McIntosh, Asst. U. S. Atty., Miami, Fla., Wallace H. Johnson, Carl Strass, Eva R. Datz, Charles E. Biblowit, Asst. Attys. Gen., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BELL, AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

The parties to this appeal were previously before us in *United States v. Joseph G. Moretti, Inc.*, 5 Cir. 1973, 478 F.2d 418 ("*Moretti I*"). The litigation derives from the dredging and filling of Florida Bay by Moretti in 1970, in the course of excavating canals for a mobile

home project on land Moretti owned at Hammer Point on Key Largo, one of the Florida Keys. Initially the district court found that Moretti's filling of navigable waters (Florida Bay), involving 400,000 cubic yards of earth, was in violation of the Rivers and Harbors Act of 1899, 33 U.S.C.A. § 403,[1] because Moretti had not secured a permit for the construction work from the Army Corps of Engineers. The court enjoined Moretti from conducting further dredge and fill work, and ordered it to undo that dredge and fill work already completed. S.D.Fla., 1971, 331 F.Supp. 151.[2]

Moretti appealed to this Court arguing that it had not violated the Corps permit requirement because the water involved was not "navigable water," and even if Florida Bay was "navigable water" the fill placed in it did not create an obstruction within the meaning of Section 403; and finally that the district court had no authority under the Act to order the removal of land fill as a "structure." This Court rejected each of these contentions finding that the district court did have jurisdiction under the Act to impose "the stringent mandatory injunction of restoration," 478 F.2d at 431, on a factual record that amply justified it. In that

decision we detailed the facts of Moretti's construction work and concluded, in agreement with the district court, "that Moretti violated the Act flagrantly and . . . that mandatory affirmative relief requiring a burdensome performance is statutorily and equitably appropriate on these facts." 478 F.2d 418, 421.

Despite this finding that Moretti had violated the Act, this Court held that Moretti must be given the opportunity to pursue his after-the-fact permit application under procedures specifically authorized by the Corps regulations.[3]

After remand Moretti sought administrative approval of his after-the-fact permit application. It was ultimately denied by the Chief of the Corps of Engineers. Moretti then sought review of that administrative action in the district court. It upheld the Corps' denial of the permit. S.D.Fla.1974, 387 F.Supp. 1404. In his appeal from that judgment, consolidated with this appeal, we have this day affirmed the judgment of the district court. *Moretti, Inc. v. Hoffman*, 5 Cir. 1976, 526 F.2d 1311.

After the Corps denied Moretti's permit application, the district court had revised and expanded its original restoration or-

---

1. The Rivers and Harbors Act of 1899, 33 U.S.C.A. § 403 states:

   The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

2. The statutory authority for the injunction is found in § 406:

   Every person and every corporation that shall violate any of the provisions of sections 401, 403, and 404 of this title or any rule or regulation made by the Secretary of the Army in pursuance of the provisions of section 404 of this title shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court. And further, the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States.

3. These regulations are set forth in *Moretti I,* 478 F.2d at 425.

der to require not only that the filled area in Florida Bay bayward of the pre-existing mean high tide line be restored to its original condition, but that all canals in Parcel B (an area which had not been conveyed to individual owners) be completely filled both bayward and landward of the MHTL. The district court also expanded its original order by requiring as to Parcel A (an area which had been conveyed to individual owners) that Moretti fill four upland canals to a depth of 10 feet below mean sea level at their mouths, sloping gradually upward to a depth of 8 feet below mean sea level at their upland ends.

Moretti does not take issue with the original order requiring restoration bayward of the MHTL but he challenges the jurisdiction of the Corps under Section 403 to require a permit, and the jurisdiction of the district court under Section 406 to enter a mandatory injunction requiring the filling of upland canals above MHTL. The fulcrum of this argument is *Moretti I,* in which the Court said that the Corps had no regulatory power landward of MHTL, and thus the district court could not injunctively order reconstruction of upland topography, 478 F.2d at 429. Moretti further argues that all the individual owners of land adjacent to the dredged canals should have been joined as indispensable parties under Rule 19, F.R.Civ.P. Joseph G. Moretti, Jr., individually, contends that it was error for the district court to impose personal liability on him for the costs of compliance with the affirmative injunction.

■ Moretti strenuously contends that this Court has already resolved the question of Corps jurisdiction over canals above MHTL in the negative. The argument is that the district court now has required it to do more than it was required to do under the original restoration order which did not affect activities shoreward of the MHTL. As we have this day explicated in *United States v. Sexton Cove,* 5 Cir. 1976, 526 F.2d 1293, the Corps may under certain circum-

stances exercise jurisdiction over dredging and filling operations above MHTL under Section 403 of the Rivers and Harbors Act. Prerequisite for such jurisdiction are factual circumstances showing some effect upon navigable waters, some alteration or modification of either course, location, condition or capacity of those waters. These statutory terms are broad and undefined. So long as activities fall within this generous scope, those activities are subject to the jurisdiction of the Corps.

■ Under the original restoration order, the district court specified only reconstruction of topography that had originally been below the MHTL. The district court at that time directed that the fill Moretti had dumped into Florida Bay be removed. Along with this specific requirement, the district court in the original injunction properly issued its general order requiring Moretti "to restore the navigable capacity of Florida Bay to its original condition as that bay existed at Hammer Point prior to the defendants' development operations." Such a requirement is consistent with the Act's authorization, 33 U.S.C.A. § 406, of injunctive enforcement of removal of any violation of Section 10. The canals dredged above MHTL simply were not in issue at that non-final stage of the litigation. By the initial order Moretti was required to file with the district court a formal plan showing in detail how the restoration to the original condition was to be effectuated. Thus, when the case was before us for review previously, the so-called "final" restoration order was not in fact final in the sense that it had not yet been fully formulated with specifics. The details of how the Bay's original condition could be restored had not been determined.

We view the district court's original order of restoration as merely the first step in enforcing the statutory mandate that any obstruction resulting from unauthorized dredging and filling operations must be "removed" or undone. That order cannot be confused and now erected as a barrier to effectuation of ·

the concomitant principle articulated in that same order. In *Moretti I* in disposing of Moretti's jurisdictional challenge to its dredging in the Bay, we acknowledged that "[j]ust what bearing [MHTL] has at this, not the enforcement, stage is not easy to say." *Moretti I, supra,* 478 F.2d at 429. The only issue before the Court then was jurisdiction over activities below MHTL. Only now, after the case has indeed proceeded through all appropriate administrative procedures to completion, is the precise question of this latter jurisdiction before this Court.

Now that the district court has issued a restoration order specifically requiring filling of canals above MHTL as necessary to restore the Bay to its original condition, the case has finally reached the enforcement stage. On review we have a voluminous record containing extensive evidence of damaging ecological effects upon navigable waters from Moretti's dredging of canals above MHTL. In light of the pervasiveness of this evidence,[4] there can be no doubt that these activities have altered and modified the condition and capacity of Florida Bay in violation of Section 10 of the Rivers and Harbors Act. With this substantial environmental evidence, together with the Corps' final rejection of all permit applications, we think the uncertainty that was expressed in *Moretti I* about the significance of the MHTL as a jurisdiction line is now resolved. The MHTL is not an absolute demarcation of Corps jurisdiction. As we said in *Sexton, supra,* "[t]here is not the slightest intimation that an alteration or modification whose source is above MHTL is any less an alteration or modification. There is nothing in the language of the statute nor the logic of its implementation which creates this barrier beyond which the Corps is ubiquitously powerless."

■ Furthermore, this Court has previously emphasized the Corps' affirma-

tive duty to "refuse on conservation grounds to grant a permit under the Rivers and Harbors Act." *Zabel v. Tabb,* 5 Cir. 1970, 430 F.2d 199, 214, *cert. denied,* 1971, 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808. The Corps bears a broad statutory obligation to carry out the Rivers and Harbors Act's permit authorization requirement for dredging and fill projects so as to advance the "preservation of our environment" by considering ecological factors. *Id.* at 201. When the Moretti record of grave environmental degradation of the condition of navigable waters resulting from the-above-MHTL dredging activities is viewed in the light of *Zabel,* the conclusion we reach today can clearly be understood as simply the logical result of the principles underscored in *Zabel.* Moretti's dredging of upland canals affected the condition of navigable waters and were subject to the Corps jurisdiction. The district court had the authority to order restoration of the topography where the canals are now situated.

Nevertheless, we reverse and remand for an evidentiary hearing on the manner of restoration to be performed by Moretti. Moretti must be afforded an opportunity to present its objections to the feasibility and environmental advisability of the restoration order to be undertaken. The district court remedial injunction like that in *Sexton, supra,* was entered without a factual record establishing that the court's choice of restoration was based upon a complete examination of both the environmental factors involved and the practicalities of the situation.

■ In addition, we conclude that the district court erred in holding Joseph G. Moretti, Jr., personally liable for the costs of the restoration undertaking. We have today explained in *Sexton, supra,* that the Rivers and Harbors Act does not authorize such personal liability.

---

4. The chain of harmful ecological consequences of Moretti's activities are summarized in *Moretti I,* 478 F.2d at 421, n. 3. These effects are discussed in more detail by the dis-

trict court, 331 F.Supp. at 156–57. Further, the record before us now contains even further such documentation after *Moretti I.*

Accordingly, we reverse the judgment against Joseph G. Moretti, Jr., individually. Finally, for reasons set forth in *Sexton, supra,* we reject Moretti's argument that the individual Hammer Point lot owners adjacent to the dredged canals were indispensable parties to this litigation.

The judgment against Moretti individually is reversed and judgment is rendered in his favor. The judgment requiring restoration of the dredged canals is vacated and this cause is remanded for further proceedings not inconsistent with this opinion.