**WINNEBAGO TRIBE OF NEBRASKA,**
Appellant,

v.

**Col. James W. RAY, District Engineer, Omaha District, United States Army, Corps of Engineers, Iowa Public Service Company, and Nebraska Public Power District, Appellees.**

No. 79–1632.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 7, 1979.

Decided March 13, 1980.

Michael D. Gooch, Intertribal Legal Services, Winnebago, Nev. (argued), and Lawrence Hammerling, Omaha, Neb., on brief, for appellant.

Jerry Jackson, Atty., Dept. of Justice, App. Section, Land & Natural Resources Div., Washington, D.C., argued, for appellees.

James J. DeMars, Barlow, Johnson, DeMars & Flodman, Lincoln, Neb., argued, for appellees and on brief, for Iowa Public Service Co. and Nebraska Public Power District.

Sanford Sagalkin, Acting Asst. Atty. Gen., Washington, D. C., Edward G. Warin, U. S. Atty. and David A. Kubichek, Asst. U. S. Atty., Omaha, Neb., Raymond N. Zagone and Robert L. Klarquist, Attys., Dept. of Justice, Washington, D. C., on brief, for federal appellees.

Before LAY, Chief Judge,* and BRIGHT and McMILLIAN, Circuit Judges.

BRIGHT, Circuit Judge.

Winnebago Tribe of Nebraska (the Tribe) appeals an order of the district court[1] denying its request for a permanent injunction to bar construction of a proposed power line running from Raun, Iowa, to Hoskins, Nebraska. The Tribe claims the district court erred in holding that the issuance of a permit to cross the Missouri River by the Army Corps of Engineers (Corps) was not a "major federal action" within the meaning of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321–47 (1976). The Tribe also maintains that, contrary to the district court's holding, it sustained its burden of proof by raising substantial environmental issues. Finally, the Tribe argues that the Corps' determination not to prepare an environmental impact statement (EIS) was unreasonable. For reasons set forth below, we reject these contentions and affirm the holding of the district court.

I. *Background.*

Appellee Nebraska Public Power District (NPPD) began planning construction of a 345 KV transmission line from Raun, Iowa, to Hoskins, Nebraska, in 1975. The proposed line would cross the Missouri River 150 feet south of an Omaha Public Power District (OPPD) line and run through the Winnebago Indian Reservation. In the fall of 1977, NPPD informed the Tribe and the Bureau of Indian Affairs of its intent.

On July 13, 1978, appellee Iowa Public Service Company (IPS), a joint venturer with NPPD in this project, applied to the Corps for a permit to cross the Missouri River, as required by 33 U.S.C. § 403 (1976) (originally enacted as Rivers and Harbors Appropriation Act of March 3, 1899, ch. 425, § 10, 30 Stat. 1151) (hereinafter section 10). Before granting the permit, the Corps prepared an environmental effect assessment on the impact of the river-crossing portion of the line (approximately 1.25 miles out of 67 miles). The assessment concluded that an environmental impact statement was not required because "[t]here are no significant environmental impacts associated with this project." The assessment did not mention any possible adverse effect on bald eagles, a protected species.[2] The Corps granted the section 10 permit on January 10, 1979.

On April 30, 1979, the Tribe filed the present suit alleging noncompliance with NEPA and seeking to enjoin construction pending compliance. On May 1, 1979, the district court granted a temporary restraining order. In the course of a three-day trial in May, the court heard testimony on the potential harm to the American bald eagle, a protected species, as well as arguments on the sufficiency and scope of the Corps' assessment. The trial court ruled that the assessment properly considered only the river-crossing portion of the line, because the scope of the federal permit was limited to this area and the federal government was not funding the project. After weighing the evidence on danger to the American bald eagle, the district court concluded that the Tribe had failed to raise a substantial environmental issue. Accordingly, the trial court denied the requested injunctive relief.

II. *Analysis.*

Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C) (1976), requires that the rele-

---

* The Honorable Donald P. Lay became Chief Judge of the Eighth Circuit on January 1, 1980.

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

2. *See* Bald Eagle Protection Act, 16 U.S.C.A. §§ 668–668d (1974 & West Supp.1979); Migratory Bird Treaty Act, 16 U.S.C.A. §§ 703–712 (1974 & West Supp.1979), 50 C.F.R. § 10.13 (1978); Endangered Species Act of 1973, 16 U.S.C.A. §§ 1531–43 (1974 & West Supp.1979), 50 C.F.R. § 17.11 (1978).

vant federal agency prepare an EIS for "major federal actions significantly affecting the quality of the human environment." Initially, the agency determines whether the proposed action triggers the EIS requirement. *See Minnesota Public Interest Research Group v. Butz,* 498 F.2d 1314, 1319–20 (8th Cir. 1974) (*en banc*) (*MPIRG I*). In *MPIRG I, supra,* this court set forth the standard for judicial review of an agency's threshold determination not to prepare an EIS:

> To upset an agency determination not to prepare an impact statement, it still must be shown that the agency's determination was not reasonable under the circumstances. This will require a showing that the project could significantly affect the quality of the human environment. *Save Our Ten Acres v. Kreger,* [472 F.2d 463, 466 (5th Cir. 1973)]. We therefore hold that review of an agency's determination not to prepare an impact statement should be measured by its reasonableness in the circumstances, not as to whether it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. [*MPIRG I, supra,* 498 F.2d at 1320 (footnote omitted); *accord, Monarch Chemical Works, Inc. v. Thone,* 604 F.2d 1083, 1087–88 (8th Cir. 1979).]

*MPIRG I,* in requiring that the plaintiff must show "that the project could significantly affect the quality of the human environment," relied upon *Save Our Ten Acres v. Kreger,* 472 F.2d 463, 466 (5th Cir. 1973) (*SOTA*). In *SOTA* and subsequent cases, the Fifth Circuit elaborated upon the required showing by allocating burdens of proof: the plaintiff must raise a substantial environmental issue concerning the proposed project, and then the burden shifts to the defendant to support the reasonableness of the negative determination. *See SOTA, supra,* 472 F.2d at 467; *Hiram Clarke Civic Club, Inc. v. Lynn,* 476 F.2d 421, 425 (5th Cir. 1973); *Image of Greater San Antonio, Texas v. Brown,* 570 F.2d 517, 522 (5th Cir. 1978).

■ In the present suit, the district court assigned appellant the burden of raising a substantial environmental issue. The parties to the present appeal do not take issue with the district court's use of this approach, nor do we find the method inappropriate. A number of district courts throughout the country have employed this analysis. *See Pokorny v. Costle,* 464 F.Supp. 1273 (D.Neb.1979); *Hiatt Grain & Feed, Inc. v. Bergland,* 446 F.Supp. 457 (D.Kan.1978), *aff'd* 602 F.2d 929 (10th Cir. 1979); *Mid-Shiawassee County Concerned Citizens v. Train,* 408 F.Supp. 650 (E.D. Mich.1976), *aff'd mem.,* 559 F.2d 1220 (6th Cir. 1977); *Jones v. HUD,* 390 F.Supp. 579 (E.D.La.1974). Indeed, without commenting on the district court's characterization of the burden of proof, this court has affirmed an opinion that concluded that many of the plaintiff's claims failed to raise a substantial environmental issue. *Monarch Chemical Works, Inc. v. Exon,* 466 F.Supp. 639 (D.Neb.), *aff'd sub nom. Monarch Chemical Works, Inc. v. Thone,* 604 F.2d 1083 (8th Cir. 1979). Accordingly, we must determine whether the district court erred in holding that the Tribe failed to meet its burden.

■ To establish a substantial environmental issue, the "[p]laintiff must allege facts [omitted from consideration in the administrative record] which, if true, would constitute a 'substantial' impact upon the environment." *Hiatt Grain & Feed, Inc. v. Bergland, supra,* 446 F.Supp. at 490 (citations omitted). The alleged deficiency must be of sufficient significance to warrant shifting the burden of proof. *See Monarch Chemical Works, Inc. v. Exon, supra,* 466 F.Supp. at 647–48; *Pokorny v. Costle, supra,* 464 F.Supp. at 1275–77.

The Tribe claims that the administrative record is deficient in three respects: (1) it ignores sixty-five miles of the sixty-seven mile transmission line; (2) it does not consider certain viable alternatives; and (3) it does not contemplate potential harm to bald eagles. We deal with these claims in the order presented.

A. *Failure to Consider the Entire Project.*

██ The Tribe alleges that the administrative record should have considered environmental impacts posed by the entire transmission line, rather than just the river-crossing portion. Appellant's claim presents two related issues: (a) whether the Corps wields such control and responsibility over the entire project that nonfederal segments must be included in the assessment; and (b) assuming limited federal involvement, whether the Corps nevertheless must consider the impacts of nonfederal segments as secondary effects of the proposed action.

The Tribe notes initially that the power line will not be constructed without the section 10 permit. In light of "but for" veto power, the Tribe argues, the Corps wields sufficient control over the entire project to require project-wide environmental analysis. Factual or veto control, however, must be distinguished from legal control or "enablement." *See NAACP v. Medical Center, Inc.,* 584 F.2d 619 (3d Cir. 1978) (*Medical Center*); *Atlanta Coalition on the Transportation Crisis, Inc. v. Atlanta Regional Commission,* 599 F.2d 1333 (5th Cir. 1979) (*Atlanta Coalition*).

In "enablement" cases federal action is a legal condition precedent to accomplishment of an entire nonfederal project. *Medical Center, supra,* 584 F.2d at 632–33; *Atlanta Coalition, supra,* 599 F.2d at 1345–47. Thus, for example, the federal statute at issue in *Greene County Planning Board v. FPC,* 455 F.2d 412 (2d Cir.), *cert. denied,* 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), required the Federal Power Commission to assure that the entire project was "best adapted" to a comprehensive environmental plan before licensing construction of a power line. *See also Cady v. Morton,* 527 F.2d 786 (9th Cir. 1975) (the federal grant of

Indian coal leases was the legal condition precedent for the strip mining project); *Davis v. Morton,* 469 F.2d 593 (10th Cir. 1972) (ninety-nine year lease of Indian lands was legal condition precedent to entire development project). The statute at issue in this case is far narrower and cannot be construed as a grant of legal control over the entire project.[3]

The court in *Medical Center, supra,* identified three factors helpful in determining whether "but for" or factual control requires project-wide analysis: (1) the degree of discretion exercised by the agency over the federal portion of the project; (2) whether the federal government has given any direct financial aid to the project; and (3) whether "the overall federal involvement with the project [is] sufficient to turn essentially private action into federal action." *Id.* at 629 (citation omitted). In *Medical Center,* the agency had little or no discretion, there was no direct federal aid, and the court found the federal involvement insufficient.

In the present suit, while the Corps has broad discretion to consider environmental impacts (*see Zabel v. Tabb,* 430 F.2d 199 (5th Cir. 1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808 (1971)), that discretion must be exercised within the scope of the agency's authority. As noted above, the Corps' jurisdiction under section 10 extends only to areas in and affecting navigable waters. *See United States v. Sexton Cove Estates, Inc.,* 526 F.2d 1293, 1299 (5th Cir. 1976); *Weiszmann v. District Engineer, United States Army Corps of Engineers,* 526 F.2d 1302, 1304 (5th Cir. 1976); *United States v. Joseph G. Moretti, Inc.,* 526 F.2d 1306 (5th Cir. 1976). As the Third Circuit observed in *United States v. Stoeco Homes, Inc.,* 498 F.2d 597, 607 (3d Cir. 1974):

The federal environmental protection statutes did not * * * by their terms

---

**3.** Section 10 does not contain the type of broad mandate present in the Federal Power Commission Act. *Compare Greene County Planning Board v. FPC, supra,* 455 F.2d at 423. The Corps' jurisdiction under section 10 governs nonfederal actions only to the extent they "affect the course, condition, capacity or location

of [navigable waters] * * *." *United States v. Sexton Cove Estates, Inc.,* 526 F.2d 1293, 1299 (5th Cir. 1976). *See Weiszmann v. District Engineer, United States Army Corps of Engineers,* 526 F.2d 1302, 1304 (5th Cir. 1976); *United States v. Joseph G. Moretti, Inc.,* 525 F.2d 1306 (5th Cir. 1976).

enlarge the jurisdiction of the Army Corps of Engineers under the Rivers and Harbors Appropriation Act of 1899. If there is no such jurisdiction environmental protection is still a matter primarily of state concern.

Thus, the Corps' discretion under section 10 does not dictate project-wide review.[4]

The factors remaining for consideration under *Medical Center* are the presence of direct federal funding and the degree of federal involvement. There has been no direct or even indirect federal funding for this project. *Cf. Ely v. Velde,* 451 F.2d 1130 (4th Cir. 1971) (Law Enforcement Assistance Administration involvement in and funding for a state prison amounts to major federal action). As for federal involvement, the fact that part of the line will cross the Winnebago Reservation does not suffice to turn this essentially private action into federal action.[5] Federal law allows the state to condemn this land for any public purpose in the same manner as land owned in fee. 25 U.S.C. § 357 (1976). Thus, we conclude that the Corps did not have sufficient control and responsibility to require it to study the entire project.

The Tribe also notes that an agency must consider secondary or indirect impacts in determining whether there are any significant impacts upon the environment. *See* 40 C.F.R. § 1500.6(b) (1978). Appellant argues that the administrative record does not reflect consideration of a secondary effect of granting the permit—namely, building the remainder of the line. If, however, appellant's position were correct, then an EIS for a properly segmented portion of highway would have to consider impacts of subsequent segments as well. A careful reading of the Council on Environmental Quality Guidelines, 40 C.F.R. § 1500.8(a)(3)(ii) (1978),[6] leads us to reject appellant's contention as erroneous. Completion of the non-federal aspects of this single project does not constitute a secondary or indirect effect of the federal action.

### B. *Alternatives.*

■ Appellant's second alleged deficiency in the administrative record is the absence of certain alternatives;[7] however, the Tribe did not allege this failure in its complaint, nor did the district court consider the claim in its memorandum opinion.[8] Because appellant failed to raise this issue to

**4.** Contrary to the Tribe's claim, the Corps' amended regulations do not appear to make the grant of a section 10 permit a *per se* major federal action. *See* 44 Fed.Reg. 38,292, 38,294, 38,307–12 (1979)(to be codified in 33 C.F.R. § 230.6(e) and Appendix B to 33 C.F.R. § 230). Moreover, new Council on Environmental Quality regulations, 43 Fed.Reg. 55,978 (1978) (to be codified in 40 C.F.R. §§ 1500–08), as well as amended Corps of Engineers regulations, 44 Fed.Reg. 38,292 (1979) (to be codified in 33 C.F.R. § 230), postdate the assessment here and do not apply. *See* 43 Fed.Reg. 56,002 (1978) (to be codified in 40 C.F.R. § 1506.12).

**5.** *Cf. Citizens Committee for the Hudson Valley v. Volpe,* 425 F.2d 97, 106 (2d Cir.), *cert. denied,* 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970) (Corps required to prepare project-wide EIS now because both Congress and the Secretary of Transportation later will have to approve other portions of the state expressway project).

**6.** 40 C.F.R. § 1500.8(a)(3)(ii) provides in part:
(ii) Secondary or indirect, as well as primary or direct, consequences for the environment should be included in the analysis. Many major Federal actions, in particular those that involve the construction or licensing of infrastructure investments (e. g., highways, airports, sewer systems, water resource projects, etc.), stimulate or induce secondary effects in the form of associated investments and changed patterns of social and economic activities. Such secondary effects, through their impacts on existing community facilities and activities, through inducing new facilities and activities, or through changes in natural conditions, may often be even more substantial than the primary effects of the original action itself. For example, the effects of the proposed action on population and growth may be among the more significant secondary effects.

**7.** The environmental assessment did consider three alternatives, including the no action option.

**8.** At trial, the only discussion of other alternatives arose in response to the following question, posed by the Tribe's counsel: "[H]as the District, since this litigation began, considered any alternatives to solving this shortage if this line can't be built?"

the trial court, we will not consider it as a basis for reversal. *See Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976), and cases cited therein. Furthermore, we conclude that our refusal to consider the issue would not result in "a plain miscarriage of justice," nor is it "inconsistent with substantial justice." *Id.*

### C. *Potential Harm to Eagles.*

■ Finally, the Tribe claims it raised a substantial environmental issue concerning possible harm to bald eagles. The trial court summarized the evidence regarding eagles as follows:

> [F]irst, the Corps considered several different varieties of birds in evaluating the area and concluded that there would be only short-term impacts resulting from the actual construction of the project, though some terrestrial habitats would be disturbed. Second, the Corps did not specifically consider the American bald eagle in its evaluation. Third, some eagles have been sighted in the area but there is no evidence that they nest in the area. Fourth, a small number[9] of eagles are electrocuted each year throughout the United States.

The trial court noted that there was no evidence establishing either that high power lines affect eagles differently than the species of birds considered in the assessment, or that the existing OPPD power line has detrimentally affected the bald eagles in the area. We hold that on the basis of this evidence the trial court did not err in concluding that the Tribe failed to establish a significant environmental impact on eagles.

### III. *Conclusion.*

The Tribe has failed to meet its burden of raising a substantial environmental issue omitted from consideration in the administrative record. Accordingly, we affirm the order of the trial court denying a permanent injunction.

---

**9.** Dr. Louis Locke, a wildlife pathologist for the U.S. Fish and Wildlife Service, testified that approximately six percent of eagles necropsied between 1975 and 1977 had died of electrocution.

Before LAY, Chief Judge,* and BRIGHT and McMILLIAN, Circuit Judges.

### ON STAY OF MANDATE

Appellant Winnebago Tribe requests a stay of mandate pending its application for writ of certiorari before the Supreme Court. Nongovernmental appellees resist the application for stay, asserting that the effect of the stay would serve to continue an order of this court dated October 15, 1979, which enjoined construction of the power line and condemnation procedures pending disposition of the appeal.

Initially, we observe that in a civil case appellants may apply for certiorari to the Supreme Court within ninety days after entry of the judgment in this court. 28 U.S.C. § 2101(c) (1976). The same is true where our mandate is issued, except the record would be obtained from the clerk of the court possessed of that record. Sup.Ct. R. 12(2).

The filing of a record in the Supreme Court is not a prerequisite for docketing an appeal. Sup.Ct. R. 12(1). In the ordinary civil case the stay of mandate may facilitate procedures because the clerk of this court on request will forward the record from this court to the Supreme Court. Sup.Ct. R. 12(2).

Here, however, a stay of mandate would also serve to extend the injunction issued pending appeal. In light of our disposition on the merits, we do not think it appropriate to continue the injunction issued pending appeal.

Accordingly, the stay of mandate is granted, subject to the following conditions:

1) The injunction pending appeal issued by this court on October 15, 1979, is dissolved herewith.

2) The appellant's motion to stay the mandate is granted for a period of thirty

---

* The Honorable Donald P. Lay became Chief Judge of the Eighth Circuit on January 1, 1980.

days from the date of this order, pending application for a writ of certiorari before the Supreme Court. If said petition is filed within thirty days, the stay shall continue until disposition of the case by the Supreme Court.

It is so ordered.

*The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.