**Fred WEISZMANN, Plaintiff,**

v.

**DISTRICT ENGINEER, UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants.**

No. 74–469–CIV–EPS.

United States District Court, S. D. Florida.

July 13, 1982.

Fred Weiszmann, Northbrook, Ill., James T. Hendrick, H. Ray Allen, Key West, Fla., for plaintiff.

Kenneth A. Reich, U. S. Dept. of Justice, Land and Natural Resources Div., Washington, D. C., for defendants.

## FINAL ORDER AND MEMORANDUM OPINION

SPELLMAN, District Judge.

### INTRODUCTION

This case was originally filed by Plaintiff, Fred Weiszmann ("Weiszmann"), as an action for declaratory and injunctive relief against the U. S. Army Corps of Engineers to restrain the Corps of Engineers from requiring Weiszmann to obtain permits for the construction of canals in his Orchid Park Subdivision of Sugarloaf Key, Monroe County, Florida. The United States filed an answer and counterclaimed under the provisions of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. 1251 et seq., and the Rivers and Harbors Act, 33 U.S.C. 403, to enforce the permit requirements of these statutes, to enjoin further work by Weiszmann, for civil penalties and other appropriate relief. Trial was held on December 3, 1974 and on February 12, 1975 the late Judge William Mehrtens entered a judgment dismissing Weiszmann's Complaint and granting relief to the United States on its counterclaim.

Judge Mehrtens found that it would have been impossible for the southern canal to be connected to the Cross Key Canal without some of the dredged spoil, rock or sand being discharged into the Cross Key Canal.[1] It was also found that the excavation of the Weiszmann canals altered or modified the course, location, condition or capacity of nearby navigable waters of the United States by diverting waters therefrom. Weiszmann never received a permit from the Army Corps of Engineers for the construction of this canal system in the Orchid Park Subdivision.

Weiszmann was ordered to plug his connected (south) canal, to fill both canals, to pay a civil penalty of $5,000.00 and not to sell, convey or dispose of any lots in his subdivision pending compliance with the judgment. On appeal, the Fifth Circuit Court of Appeals upheld the finding of violation, held that the Court should have held a hearing on the proper manner of restoration at which Weiszmann could present his objections, held that the Court had no jurisdiction over the unconnected (north) canal and affirmed the rest of the Court's Order. It remanded for an appropriate restoration hearing. *Weiszmann v. District Engineer, et al.*, 526 F.2d 1302 (5th Cir. 1976). After subsequent negotiations between the parties, Judge Mehrtens entered a Final Consent Judgment dated December 10, 1976 for the restoration of the canal system. Thereafter Weiszmann was unable to acquire the necessary right of way easements on adja-

---

1. Memorandum Opinion, *Weiszmann v. District Engineer, U.S. Army Corps of Engineers, et al.*, No. 74–469–CIV–WM (S.D.Fla.1975).

cent private lands, making performance of the Order impossible. Weiszmann petitioned the Court to amend the Final Order to enable him to perform. The United States moved to vacate the Final Order and opposed Weiszmann's motion to amend. The Court took the motion to amend under advisement for future hearing [2] and vacated the Final Order on June 23, 1978.

On April 6, 1981, the United States filed a motion for contempt against Weiszmann alleging that he had failed to pay the $5,000.00 fine assessed and had sold several subdivision lots contrary to the Court's Order. Weiszmann paid the fine plus accrued interest on April 23, 1981. This Court entered an Order on May 29, 1981 forbidding any further sales or alienation of the subject property pending further order. On July 13, 1981, it granted the United States' motion for costs and attorneys' fees and ordered Mr. Weiszmann to pay $1,435.45.

The current proceeding is the restoration hearing ordered by the Fifth Circuit. This Court held a four-day hearing beginning May 24, 1982, into the appropriate manner of restoration of the illegally dredged southern canal in Orchid Park Subdivision. The United States presented evidence from six experts—several biologists, a hydrologist, and an engineer, as well as the chief of the Regulatory Branch of the Jacksonville District, United States Army Corps of Engineers, in support of its restoration plan. Weiszmann, in addition to himself, presented testimony from two experts—a biologist and a hydrologist, as well as from a representative of the Florida Department of Environmental Regulation in objection to the Government's restoration plan and in presentation of an alternative restoration plan. On the basis of the evidence presented, as well as the memoranda and arguments of the parties at the restoration hearing, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Weiszmann is the beneficial owner of Orchid Park Subdivision, Sugarloaf Key, Monroe County, Florida. This is the subject property of the above-styled cause. The tract consists of 22 acres which are divided into 49 undeveloped lots. Under the terms of the trust agreement establishing his beneficial interest, Weiszmann has full power to direct the sale, lease, improvement or other disposal of the lots in the subdivision which have not been sold to third parties. As of the date of the restoration hearing, eleven of the lots have been sold to third parties. Weiszmann controls the rest of the lots in the subdivision.

The eastern boundary of Orchid Park is a pre-existing north-south canal (the Cross Key Canal) connecting upper Sugarloaf Sound to Hawk Channel. The western boundary is a state road. To the north of the subdivision is Sugarloaf Sound and to the south is Hawk Channel. Upper Sugarloaf Sound and Hawk Channel are navigable waters of the United States. The Cross Key Canal is approximately 35 feet wide with an average depth ranging from 16–18 feet. At its terminus with Sugarloaf Sound and Hawk Channel, the Cross Key Canal is 3 feet or less in depth.

Weiszmann caused to be dug at the Orchid Park Subdivision two east-west canals. Excavation began in 1971, pursuant to a subdivision plat filed with Monroe County and the State of Florida. The northern east-west canal has not yet been connected to either the Cross Key Canal or to the southern east-west canal. It has a plug of approximately 8–10 feet in width, which has been used in the past as a roadway.

The southern east-west canal was connected to the Cross Key Canal during the fall of 1973 and is navigable in fact. Both east-west canals are approximately 40 feet

---

**2.** At the restoration hearing held May 24, 1982 by this Court, the Motion to Amend the Consent Judgment was raised by Weiszmann. Weiszmann argued that the original consent judgment could be amended by this Court, despite the United States' position that the restoration agreed upon was no longer acceptable. This Court ruled, relying upon Paragraph 5 of the Consent Judgment, which gave Weiszmann a time limit of ninety days to obtain the needed easements, that the renewed Motion to Amend was denied.

in width, 1200 feet in length with an average depth of 16 feet below sea level. Some parts of the canals range up to twenty feet in depth.

In terms of variety and number of species of plant and animal life, the walls of the south canal, to a depth of 5–7 feet resemble the walls of other dead end canals in the Keys whose depth is also 5–7 feet. Below 8 feet the walls have considerably less diversity and numbers of plant and animal life. At about the midpoint of the south canal, there is a sill at a depth of about 7 feet. This sill exhibits comparable diversity and number of species to shallow dead end canal systems in the Keys.

Shallowing of the south canal to an average of 5–7 feet will not affect access to the subdivision by boat since the depths in the access points at either end of the Cross Key Canal are less than 6 feet. The plug in the north (closed) canal has deteriorated as the result of automobile traffic over it. It is now about .2 feet above the mean high water mark at its lowest point. Unless the plug is made higher, it may overflow during a severe storm or spring tide. With continual deterioration waters may be exchanged between the north (closed) canal and the Cross Key Canal.

The south canal is relatively barren of vegetation and has a depleted benthic (life on the bottom) community as compared to bottoms of dead end canals in the Keys with depths of 5–7 feet.

The Government's restoration plan involves shallowing of the south canal to an average of 4–6 feet in depth and rebuilding the plug in the northern canal to prevent water exchange between the north (closed) canal and the Cross Key Canal and to prevent overflow during a spring tide or severe rainstorm. The Government does not otherwise propose any restoration for the north (closed) canal given the Fifth Circuit's decision[3] that the Corps lacked jurisdiction over that land locked canal. The Government's approach in development of their restoration plan focused upon three considerations:

1. The pre-project conditions, i.e., the natural environment of the area before development;

2. Examination of the project as accomplished, with emphasis upon the resulting habitat and subsequent production of food materials for the area's plant and animal species; and

3. Development of a balanced plan which would restore the environmental losses which occurred.

The restoration plan presented was designed to establish a habitat with adequate water quality so that animal and plant productivity in the area was assured.

In support of its restoration plan, the United States offered the testimony of an expert environmental scientist with the U. S. Fish and Wildlife Service who had visited the site on numerous occasions. Dr. Banner testified that the area that was dredged and filled by Weiszmann included wetlands areas as defined under current regulations of the United States Army Corps of Engineers and the U. S. Environmental Protection Agency ("USEPA"). Prior to the construction of the Weiszmann canal system, the subject property included upland hammock (up to three feet above mean sea level) and tidal wetlands (down to .4 feet above mean sea level).

There was a network of mosquito ditches which tidally connected the wetlands on the subject property to wetlands in adjacent areas and to Sugarloaf Sound.

Dr. Banner concluded that as a result of Weiszmann's fill activities, about 1.3 acres of deep water and fill had been substituted for 12 acres of shallow wetlands. This substitution of shallow wetlands with deep water canals resulted in the loss of feeding areas for wading birds and the loss of a productive mangrove wetland system. Dr. Banner compared the biology of Weiszmann's deep canal with shallower comparable canals in the Keys as well as with the surrounding waters of Sugarloaf Sound. He testified that comparable shallow canals (up to 8 feet in depth) exhibit more diverse

---

**3.** *Weiszmann v. District Engineer, et al.*, 526    F.2d 1302 (5th Cir. 1976).

marine and vegetative communities than do deep canals like Weiszmann's. Further, a deep dead end canal like Weiszmann's, once development is completed, will tend to become polluted because of lower exchange rates. That is, a shallower dead end canal would tend to exchange its waters—and thus replenish the oxygen levels and clean out debris—faster than a deep dead end canal.

The testimony was corroborated by a marine biologist and hydrologist who worked for the Environmental Protection Agency. Both experts have studied and published in the field of artificial canals in the Keys. They concluded that the shallower the dead end canal, the better the benthic life will be. This is due to two factors, sunlight and flushing rates. Flushing is the exchange rate for water in a canal. Flushing rates for deep dead end canals (16–20 feet) are many times larger than for shallow canals (5–7 feet). The benthic community and diversity of organisms is absent at greater depths because of the absence of sunlight and inferior flushing rates.

The experts' study of the Weiszmann canal bore out these conclusions. In the south canal is a sill at a 7 foot depth. This sill had a seagrass community and diversity of organisms comparable to shallow (6 feet in depth) canal systems, whereas the deeper sections of the south canal did not have any seagrass or benthic life. Shallowing the south canal would promote the development of a benthic community comparable to that found in Sugarloaf Sound rather than leaving a deep, sparse system. Below a 7 foot depth there is a steady decline in water quality and productivity of the canal bottom. If the bottom of the canal is not colonized, 1.3 acres of habitat will be lost.

Mr. Weiszmann's experts did not contradict the testimony of the Government's experts regarding the value of shallowing the south canal. They testified in favor of a flow through system proposed by Weiszmann that had been permitted by the State of Florida. The system involves the following work:

a. Removal of the plug in the northern canal.

b. Widening of approximately ⅔ of the length of that canal from 40 feet to 58 feet by dredging.

c. Widening a 125 foot section of the pre-existing Cross Key Canal on the south side of the south canal and a 267 foot section on the north side of the northern canal from 35 feet to 55 feet by dredging.

d. Completion of the connection in the back of the canal system.

e. Shallowing the landward ⅓ of both canals to a 6 foot depth by filling, the fill to be obtained from the aforementioned dredging.

f. Shallowing of the remaining ⅔ of the two canals to 14 feet in depth by filling, the fill to be obtained from the aforementioned dredging, including dredging the sill at a 7 foot depth down to the 14 foot depth.

Mr. Weiszmann has neither applied for, or been permitted by the U. S. Army Corps of Engineers for his restoration plan.

Mr. Weiszmann testified that he valued his interest in the subject property at $665,000 and calculated a cost basis of $200,000. This Court concludes, based upon his further testimony as to net worth and liabilities, that Mr. Weiszmann has sufficient assets, equity in the property and income to complete the restoration plan which this Court orders without substantial financial hardship.

## CONCLUSIONS OF LAW

This case was brought originally under the provisions of Section 10, River and Harbors Act, 33 U.S.C. § 403 and the Clean Water Act, 33 U.S.C. § 1311, § 1319.

This Court has jurisdiction to order restoration pursuant to the Fifth Circuit's remand of this case for a restoration hearing:

As to the district court's injunction ordering restoration of the connecting canal, we vacate and remand for an evidentiary hearing to afford Weiszmann an opportunity to present his objections to the manner of restoration ordered. The district court remedial injunction that was en-

tered, lacks a factual record establishing that the court's choice of the specific restoration ordered was based upon a comprehensive evaluation of the environmental factors involved and the practicalities of the situation.

*Weiszmann v. District Engineer, et al,* 526 F.2d 1302 (5th Cir. 1976).

In determining the appropriate manner of restoration, this Court is guided by the Fifth Circuit's decisions in *Weiszmann, supra; United States v. Sexton Cove Estates, Inc.,* 526 F.2d 1293 (5th Cir. 1976); and *United States v. Moretti,* 526 F.2d 1306 (5th Cir. 1976). See also, *United States v. Weisman,* 489 F.Supp. 1331, 1342–50 (M.D.Fla. 1980). In *Sexton Cove, supra,* the Fifth Circuit set forth the standards to be followed in considering restoration:

> The full effects of any environmental disturbance are difficult to measure. Attempts to reverse such effects and restore the environment to its natural state carry with them no guarantee of success. Hence, any restoration plan must be carefully designed to confer maximum environmental benefits. At the same time, the law must be tempered with a touch of equity... The degree and kind of wrong and the practicalities of the remedy must be considered in the formulation of that remedy. *United States v. Sexton Cove Estates, Inc.,* 526 F.2d 1293, 1301 (5th Cir. 1976).

The United States proposed a restoration plan of shallowing the open canal to 4–6 feet in depth and rebuilding the closed canal plug. Weiszmann presented his own plan as described above. Weiszmann argued that the Court should consider his "restoration" plan at the hearing. The United States argued that the Weiszmann plan should not be considered as a restoration plan because the developer is only entitled to present objections to the Government plan, not present his own, and that in any event Weiszmann's plan entails dredge and fill work which would require a Corps of Engineers permit and involves work in the closed canal over which this Court has no jurisdiction. It is not necessary to de-

cide whether or not a developer may present his own plan in this hearing or is reduced to raising objections to the Government's plan. See *United States v. Weisman, supra,* at 1342, where the developer presented his own plan as an alternative to the government plan and *Weiszmann, supra,* at 1304, where the Fifth Circuit implied that the developer's role was to critique the government plan.

The Court finds that Weiszmann's plan is unacceptable, either as an objection to the Government's plan or standing on its own, because it entails considerable work, both in the closed canal over which this Court has no jurisdiction, *Weiszmann, supra,* 526 F.2d at 1304, or in waters of the United States for which a permit would be required from the Corps of Engineers.

The Corps of Engineers has jurisdiction to permit the discharge of dredged and fill material into the waters of the United States, 33 U.S.C. 1344; 33 C.F.R. 323 et seq. (1981), and to permit dredging in navigable waters. 33 U.S.C. 403, 33 C.F.R. 322 (1981). Waters of the United States have been construed broadly to include wetlands areas and other waters whether or not they fit under the traditional definition of navigability. *See, e.g. Natural Resources Defense Counsel, Inc. v. Callaway,* 392 F.Supp. 685 (D.D.C.1975) (Corps regulations under Section 404 were too restrictive); *United States v. Ashland Oil and Transportation Co.,* 504 F.2d 1317, 1325 (6th Cir. 1974) (conviction for oil spill into tributary of a non-navigable creek affirmed); *Leslie Salt v. Froehlke,* 578 F.2d 742 (9th Cir. 1978) (Corps jurisdiction extends to nontidal diked areas); *United States v. Byrd,* 609 F.2d 1204 (7th Cir. 1979) (Corps jurisdiction over wetlands adjacent to intrastate lake); *United States v. Holland,* 373 F.Supp. 665 (M.D.Fla.1974) (action under Clean Water Act to restrain filling above mean high water line in a wetland); *United States v. Board of Trustees of Florida Keys Comm. College,* 531 F.Supp. 267, 273 (S.D.Fla.1981, Atkins) (ordered restoration and payment of a fine for destruction of open water slough without a permit in Florida Bay).

Weiszmann's plans require both dredging and filling activities in waters of the United States, i.e. the Cross Key Canal, the south canal and the north canal (once the plug is removed). The fact that he may have obtained a permit from the State of Florida for this work is not dispositive. The Corps of Engineers regulations require the Corps to go through a thorough public interest review procedure, as well as consultation with various federal agencies before such a permit may be granted. 33 C.F.R. 320 et seq. (1981). Grant of a state permit is only one of the conditions that is considered. 33 C.F.R. 320.4 (1981).

■ The Court notes, however, that testimony given by Dr. Banner and the U.S. Army Corps of Engineer Chief Regulator from Jacksonville, Florida indicated that the Weiszmann plan for a flow through system at a shallow depth would receive favorable review. What this Court will not allow is the circumvention of the permitting procedure under the guise of the restoration hearing.[4] Mr. Weiszmann is free to request a permit from the Corps as soon as the ordered restoration is completed. The Court, after consideration of the environmental factors presented, is of the opinion that the flow through canal system would be the most beneficial. The reason for this is that there would then be two circulating canals which would support diverse benthic communities. The Court cannot order this flow through system as restoration because the Fifth Circuit in *Weiszmann, supra,* specifically held that this Court does not have jurisdiction over the plugged canal:

> There is no merit to Weiszmann's objection to the Corps' jurisdiction over Canal # 1 which connects to the pre-existing canal. However, with respect to Canal # 2 which does not connect to any body of water, Weiszmann's jurisdictional objection is well taken. The Corps has no jurisdiction over the dredging of land-locked canals above MHTL. *Sexton, supra.* Accordingly we reverse that part of

the judgment ordering restoration of Canal # 2.

at 1304.

■ Applying the Fifth Circuit tests enunciated in *Sexton, supra,* the Court finds that modifying the proposed plan of the United States is the proper remedy. The United States proposed that the south canal be shallowed to depths of 4–6 feet and that the plug in the north canal be rebuilt as a permanent structure. The Court finds that shallowing the south canal to a depth of 5–7 feet will confer maximum environmental benefits. This conclusion is based upon the testimony of the Government's experts as to the benefits of a shallow canal and the restorative aspects in view of the wetlands area that was destroyed. This is not a harsh plan, but reasonable as it does not restore the area dredged or wetlands destroyed. It will, however, provide a productive area tending to promote benthic development. There is no issue as to the practicality of the remedy. Except for cost, Weiszmann did not present any objections to the Government's plan on an environmental basis. The projected cost of the plan ordered is not out of proportion to the harm done, and will still leave Mr. Weiszmann with saleable waterfront lots which have access to Sugarloaf Sound and Hawk Channel.

As to the plug in the north canal, the Court finds that a permanent structure is unnecessary. What is necessary is the addition of 2 feet of rip-rap (crushed rock) so that there is no exchange of waters or overflow between the north canal and the Cross Key Canal. This is to provide a temporary solution during the expected pendency of the permitting process with the Corps for Weiszmann's flow through canal system.

The Court has dealt with this cause in an equitable manner especially in light of the Fifth Circuit's comments concerning Weisz-

---

**4.** Under Mr. Weiszmann's restoration plan, this Court would in fact be ordering as "restoration" the completion of the canal system as originally planned by him in a plat filed with the State of Florida in 1970. That plan was the stimulus for the Corps' cease and desist order and the subsequent filing of this litigation.

mann's cavalier disregard of a cease and desist order from the Army Corps:

> Weiszmann did not wait for a final determination of
>
>> navigability from the Corps before proceeding with the dredging operations. When he was advised by the Corps by letter in July 1973 that a permit was necessary for the connection of the canal to navigable waters, he in turn asserted his belief that a permit was not necessary.
>>
>> Weiszmann's indulgence in such "Self-Help for the Impatient" ... is unavailing. 526 F.2d at 1305.

In addition, Weiszmann violated the late Judge Mehrtens' Order by selling lots in the subdivision during the pendency of this cause. He did not pay the $5,000 fine, which was upheld by the Fifth Circuit, until the Government moved to hold Mr. Weiszmann in contempt of Court. Finally, Weiszmann can afford to do the work required, based upon his net worth and the value of the property.

The equities here weigh heavily on the side of the Government. The degree and kind of wrong were established by Judge Mehrtens at the first trial. The Fifth Circuit affirmed. This was neither an innocent mistake nor a minor disturbance of the environment. The restoration ordered is clearly appropriate to the circumstances presented to this Court.

## CONCLUSION

Based upon the foregoing, it is hereby ORDERED AND ADJUDGED as follows:

1. Within sixty (60) days from the date of this Order, Weiszmann shall place fill in the south canal to shallow it to a maximum depth of 7 feet, sloping from 5 feet at the dead end to 7 feet at the mouth, in accordance with plans approved by the Army Corps of Engineers.

2. Within sixty (60) days from the date of this Order, Weiszmann shall place 2 feet of rip-rap on top of the plug in the north canal in order to prevent further deterioration.

3. In performing the work required by this Order, no fill shall be dredged from any waters of the United States or discharged into any waters of the United States (other than the south canal) without first obtaining the necessary permits from the federal and state governments.

4. At least one week's advance notice of the commencement of the ordered work shall be given to the United States Army Corps of Engineers.

5. Pending final completion of the work ordered above to the satisfaction of this Court and the Army Corps of Engineers, this Court retains jurisdiction of the above cause.